UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| PF PARTICIPATION FUNDING TRUST, | § | |
|---|---|---|
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-0791-B |
| PRINCIPAL LIFE INSURANCE COMPANY, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff PF Participation Funding Trust's Motion for Summary Judgment. Doc. 36. For the following reasons, the Court **GRANTS** the Motion.

## I.

## BACKGROUND

*A. Factual Background*

This is a declaratory-judgment action involving a complex series of transactions involving the purchasing and transferring of two life insurance policies. Plaintiff PF Participation Funding Trust (PFP Funding) seeks a declaration that (a) it is the owner and beneficiary of the two life insurance policies (Policies) issued by Defendant Principal Life Insurance Company (Principal Life) and (b) that it has the right to collect the death benefit on each policy once it matures. Doc. 1, Compl., ¶¶ 1, 54.[1]

---

[1] As explained further below, PFP Funding has withdraw its request for relief sought in subpart (b). *See* Doc. 61, Pl.'s Supp. Br., 3.

In January 2008, Principal Life issued the first policy to the Harris Trust with the trustee as Paul Harris and Harris Trust as the sole owner and beneficiary. Doc. 37, Pl.'s Mot. for Summ. J., 7; Doc. 1, Compl., ¶¶ 23–24. In May 2008, Principal Life issued the second policy to the Croteau Trust with Carol Croteau as the trustee and the Croteau Trust named as the sole owner and beneficiary. Doc. 37, Pl.'s Mot. for Summ. J., 6; Doc. 1, Compl., ¶¶ 14–15. The Harris Trust and the Croteau Trust are collectively referred to in this Order as the Trusts.

The Trusts initially financed the Policies by obtaining loans from nonparty First Bank of Delaware (FBD). *Id.* at 6–7. In 2006, FBD and PFP Funding entered into a series of agreements (Participation and Administrative Agreements) under which FBD agreed to make loans like the ones obtained by the Trusts and to sell a 100% participation interest in those loans to PFP Funding. *Id.* at 4. To obtain a loan, borrowers (the Trusts) formed irrevocable life insurance trusts and the Trusts each executed a note and collateral assignment of the policy to FBD as a security interest. *Id.* at 4–5. The insured then personally guaranteed the loan and signed a Guarantor's Disclosure and Acknowledgment stating that the borrower understood that the trust granted FBD both a security interest in the policy and the power to exercise its rights under the policy in case of default. *Id.*

In 2012, the Federal Deposit Insurance Corporation forced FBD into liquidation, which transferred FBD's assets into the FBD Liquidating Trust (Liquidating Trust). *Id.* at 8–9. In 2013, the Liquidating Trust transferred all of its rights under the Participation and Administrative Agreements to PFP Funding and granted PFP Funding a limited power of attorney to take action on those assets, such as the Policies at issue in this case. *Id.* Then, pursuant to this power of attorney, PFP Funding submitted to Principal Life a request to change the record owner of the Policies to itself. *Id.* at 9–10. PFP Funding also negotiated settlement agreements with both Trusts in which they relinquished all

rights, title, and interest in the Policies, and agreed to submit principal ownership change forms to Principal Life. *Id.* However, Principal Life rejected the change forms, thus the need for the current litigation. *Id.* at 11.[2]

B. *Procedural Background*

After PFP Funding filed suit, Principal Life filed a motion to dismiss claiming that the Trusts are indispensable parties and must be joined, and that venue is improper. Doc. 11, Mot. to Dismiss. 2–3. The Court denied Principal Life's Motion, found that the Trusts were not indispensable parties, and allowed the case to proceed. Doc. 22, Order. Principal Life then answered and brought a similar declaratory-judgment counterclaim asking the Court to determine whether PFP Funding is the successor-in-interest to the named collateral assignment holder, FBD, and thus, whether PFP Funding can be listed as the owner and beneficiaries on the Policies. Doc. 29, Def.'s Answer, 17–18, ¶¶ 1–2.

After the close of discovery, PFP Funding filed a Motion for Summary Judgment (Doc. 36), arguing that judgment in its favor is proper on its claim and Principal Life's counterclaim since the undisputed facts establish that (a) no one but PFP Funding claims to be the owner of the Policies; (b) the Trusts have expressly disclaimed any interest in the Policies; and (c) FBD no longer exists and, in connection with its liquidation, assigned all of its rights in the Policies, including its collateral interests, to PFP Funding. Doc. 37, Pl.'s Mot. for Summ. J., 2. In response, Principal Life restates

---

[2] In Response to this Motion, Principal Life alludes to the idea that it would have changed the owner and beneficiary of the Policies to PFP Funding had PFP Funding signed the change of ownership form as the successor-in-interest to FBD. Doc. 45, Def.'s Resp., 8. However, PFP Funding supplemented the summary-judgment record following the Response with a declaration stating that Principal Life's counsel in fact stated that even with PFP Funding's signature, Principal Life would have still rejected the change of ownership. Doc. 49, Ex. A, Supp. Decl., 1–2.

many of the same undisputed facts surrounding the various transfers of interests of these Policies, but argues that because this information was insufficient to comply with its internal change of ownership requirements, it will not grant PFP Funding the relief it seeks absent an order from this Court (or a successful interpleader action upon the death of the insureds). Doc. 45, Def.'s Resp. 1–2 & n.1. This is because Principal Life seeks to limit its liability and avoid the possibility of future claims for benefits by multiple alleged owners and beneficiaries upon the death of the insureds. *Id.* at 2 ("Principal Life is agnostic as to who the owners and beneficiaries are, so long as it is only required to pay benefits once.").

Although Principal Life does not substantively dispute whether PFP Funding is the sole successor in interest to FBD's collateral assignment interest in the Policies—it leaves it to the Court to decide—the Court was still concerned that it may not have subject matter jurisdiction to grant PFP Funding the relief it seeks based on ripeness—*i.e.*, both of the insureds are still living, and thus, there is no substantial controversy of sufficient immediacy as to who would be entitled to the benefits on the Policies upon maturity. *See* Doc. 57, Order, 1. The Court ordered supplemental briefing on this issue. *See id.* 1–2. Both parties responded with similar arguments agreeing that there is a ripe controversy over PFP Funding's request to be declared the owner and beneficiary of the Policies (subpart (a)), but that declaring that PFP Funding has the right to collect the death benefit upon maturity (subpart (b)) is not ripe since it is contingent upon certain events occurring in the future. Doc. 61, Pl.'s Supp. Br., 3; Doc. 62, Def.'s Reply to Show Cause Order, 1. In light of this, PFP Funding withdrew its request for subpart (b), Doc. 61, Pl.'s Supp. Br., 3, thus this Order only addresses the relief sought in subpart (a)—whether PFP Funding is the owner and beneficiary of the Policies. Having been fully briefed, the Court now reviews this Motion.

## II.

## ANALYSIS

Summary judgment is appropriate where the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. Fed R. Civ. P. 56(a); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Once the movant has met its burden, the nonmovant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). However, a nonmovant may not simply rely on the Court to sift through the summary-judgment record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

First, the Court discusses whether this declaratory judgment action—as to the issue of PFP Funding being declared the owner and beneficiary of the Policies—is ripe for this Court's review. A declaratory judgment action is ripe for adjudication "where an 'actual controversy' exists." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (citing 28 U.S.C. § 2201(a)). "In determining whether an actual controversy forms the basis of a declaratory judgment action, the Supreme Court has directed courts to consider 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Holcim (Tex.) Ltd. P'ship v. Fireman's Fund Ins. Co.*, 2006 WL 8437369, at *4 (N.D. Tex. Mar. 20, 2006) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). An issue is fit for

judicial intervention where it has "taken on final shape so that the court can see what legal issues it is deciding, the effect of the decision on the adversaries, and a useful purpose to be achieved in deciding them." *Holcim*, 2006 WL 847369, at *4 (quoting *El Paso Bldg. & Constr. Trades Council v. El Paso Chapter Ass'n Gen. Contractors of Am.*, 376 F.2d 797, 800 (5th Cir. 1967)). Here, there is a dispute over the ownership of the Policies based on Principal Life's refusal to acknowledge PFP Funding as owner and beneficiary without a court order. And this dispute is one of "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" since without one, PFP Funding is unable to exercise its current rights under the Policies—*e.g.*, right to sell or assign the Policies, change the beneficiaries, obtain policy information, and take loans against the Policies. Therefore, based on the parties's briefing, this Court's review, and PFP Funding withdrawing part of the original relief sought, the Court agrees with the parties and finds that this declaratory judgment action is ripe for this Court's review.

Next, the Court discusses whether PFP Funding has satisfied its summary-judgment burden on its claims and Principal Life's counterclaim. Because the claim and counterclaim in essence seek the same relief—a declaratory judgment regarding the ownership status of the Policies—the Court addresses them together. Ultimately, the Court finds that the undisputed facts show that PFP Funding is the sole successor-in-interest to FBD's collateral assignment interest in the Policies, and as such, PFP Funding is entitled to be listed as the owner and beneficiary of the Polices. Specifically, the Court finds that the undisputed evidence show:

- In 2008, Principal Life issued two life insurance policies: (1) Policy No. 6094525, insuring the life of Raymond Croteau (Croteau Policy), Doc. 46, Def.'s App'x, Ex. A; and (2) Policy No. 6087764, insuring the life of Arlene Harris (Harris Policy), *id.* at Ex. C.

- The Croteau Policy was originally issued to the Croteau Trust, *id.* at Ex. B, and the Harris Policy was originally issued to the Harris Trust, *id.* at Ex. D.

- In 2008, the Trusts each assigned collateral interests in the Policies to FBD pursuant to Assignments of Life Insurance Policy as Collateral (Collateral Assignments) in order for FBD to secure the repayment of separate loans it made to the Trusts. Doc. 39, Pl.'s App'x, Ex. A-5 (Croteau Loan); *Id.* at Ex. A-7 (Harris Loan).

- The Collateral Assignments were subject to the Participation and Administrative Agreements by and between PFP Funding and FBD dated April 25, 2007, under which FBD sold to PFP Funding a 100% participation interest in, among other things, the Collateral Assignments. *Id.* at Ex. A, 3–4; *Id.* at Ex. A-1, 13.

- In 2012, FBD terminated its deposit insurance with the Federal Deposit Insurance Corporation, surrendered its charter to the Delaware Office of State Bank Commissioner, filed articles of dissolution with the Secretary of State of the State of Delaware, and liquidated its assets. *Id.* at Ex. I, 431–32.

- As a part of this dissolution, on November 16, 2012, FBD irrevocably and absolutely transferred, assigned, conveyed, and delivered all of FBD's right, title, and interest (whether legal, beneficial, or otherwise) in and to FBD's assets to the FBD Liquidating Trust. *Id.*; *Id.* at Ex. I-1, 437.

- On September 19, 2013, pursuant to an Assignment Agreement, the FBD Liquidating Trust, on behalf of itself and FBD, sold, assigned, transferred, and delivered all of their respective right, title, and interest in the Policies to PFP Funding. *Id.* at Ex. I-2. The Assignment Agreement contained a Schedule of the "true, correct, and complete list of all Insurance Premium Loans . . .," and the Policies were listed on that Schedule. *Id.* at Ex. I-2, 469–70.

- FBD and the FBD Liquidating Trust have dissolved and no longer exist. *Id.* at Ex. I, 432–33. And Joseph Manion, Jr., who was the acting President and CEO of FBD, and who was authorized to act on behalf of the Liquidating Trust until September 2014, has sworn that FBD and the FBD Liquidating Trust did not assign any interest in the Policies to any entity or individual other than PFP Funding. *Id.* at 431; *see also* Doc. 43, Pl.'s Supp. Decl., 1–2.

- And lastly, in 2016 and 2017, the Trusts entered into settlement agreements with PFP Funding, under which, among other things, the Trusts relinquished and assigned to PFP Funding all rights, title, and interests in the Policies and the Policies' proceeds, and acknowledged PFP Funding as the sole and lawful

owner and beneficiary of the Policies. Doc. 39, Pl.'s App'x, Ex. A-16 (Croteau Settlement); *Id.* at Ex. A-18 (Harris Settlement).[3] Despite these settlement agreements, and written requests made to Principal Life, Principal Life refused to record the changes because FBD, the original collateral assignee, did not sign the change of ownership forms as required by Principal Life. *Id.* at Ex. J, 495–96.

## III.

## CONCLUSION

For the foregoing reasons, the Court finds that PFP Funding is the successor-in-interest to FBD's original collateral assignment interests in the Policies. Based on this finding, the Court further finds that PFP Funding is the sole owner and beneficiary of the Policies and is thus entitled to being listed on the Policies as such by Principle Life. Therefore, the Court **GRANTS** PFP Funding's Motion for Summary Judgment. Doc. 36. Final Judgment to follow.

**SO ORDERED.**

**SIGNED: March 8, 2019.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[3] Also, in their depositions, Raymond and Carol Croteau have disclaimed any remaining interest in the Croteau Policy. Doc. 39, Pl.'s App'x, Ex. B, 324–29 (Carol Croteau); *Id.* at Ex. E, 382 (Raymond Croteau). Similarly, Paul and Arlene Harris have disclaimed any remaining interest in the Harris Policy. *Id.* at Ex. F, 397 (Paul Harris); *Id.* at 421–23 (Arlene Harris).